UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:02 CR 44 |
| | ) | |
| TERENCE DILWORTH | ) | |

## OPINION AND ORDER

Defendant Terence Dilworth has filed a motion for a reduced sentence under 18 U.S.C. § 3582(c)(2). (DE # 689.) Mr. Dilworth was found guilty of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846 and distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). At the time of Mr. Dilworth's original sentencing, his guideline offense level was found to be 40, and criminal history category of III, which corresponded to a guideline range of 360 months to life imprisonment. The court sentenced Mr. Dilworth to a term of 360 months imprisonment.

The original presentence report ("PSR") used when Mr. Dilworth was sentenced concluded that "the amount of drugs attributed to the defendant in this case far exceeds 1.5 kilograms of crack cocaine." (PSR at 10; DE # 676-1 at 11.) At the time of his sentencing, any consideration as to how greatly in excess of 1.5 kilograms he bore responsibility was unnecessary, because the sentencing guidelines set a quantity of 1.5 kilograms of crack cocaine as the threshold for the maximum base offense level of 38. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2003). Mr. Dilworth's adjusted offense level was 40 as the result of a two-level increase for possession of a dangerous weapon.

Mr. Dilworth moved for a reduced sentence in 2009 after the United States Sentencing Commission promulgated Amendment 706, which, generally speaking, lowered the sentencing range for offenses involving crack by two levels. (DE # 580.) As the result of Amendment 706, a quantity of 4.5 kilograms of crack cocaine became the threshold for the maximum base offense level. The court denied that motion after determining that Mr. Dilworth was responsible for in excess of 4.5 kilograms of crack, and therefore, he was not eligible for a sentence reduction. (DE # 603.) Mr. Dilworth appealed, and the United States Court of Appeals for the Seventh Circuit affirmed this court's decision. (DE # 666-1); *see also United States v. Davis,* 682 F.3d 596, 618-19 (7th Cir. 2012).

Mr. Dilworth has now moved for a sentence reduction under Amendment 750.[1] (DE # 689.) Amendment 750 raised the threshold for the maximum base offense level of 38 to 8.4 kilograms of cocaine base. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2011). The court is authorized to reduce a sentence only when a defendant's sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The relevant policy statement here provides: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2)

---

[1] The court requested an addendum to the PSR from the United States Probation Office. (DE # 675.) The United States Probation Office concluded that Mr. Dilworth is not eligible for a reduction. (DE # 676.)

if . . . [a]n amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(a)(2)(B) (2012).

In his motion for a reduced sentence under Amendment 750, Mr. Dilworth argues that because the court has never made a finding that he is responsible for 8.4 or more kilograms of crack, his base offense level should be 36.[2] (DE # 689 at 3.) Mr. Dilworth contends that with his base offense level of 36, and adding the two-level enhancement for the firearms possession, his total offense level should be 38. (*Id.*) A base offense level of 38 combined with a criminal history category of III results in a guideline range of 292-365 months. Thus, Mr. Dilworth argues that the court should reduce his sentence to 292 months. (*Id.*)

As the government points out in its response, however, the court has never determined that Mr. Dilworth is responsible for exactly 4.5 kilograms of crack. (DE # 692 at 2.) Instead, in denying Mr. Dilworth's motion for a reduced sentence under Amendment 706, the court stated that it had "no trouble concluding that Mr. Dilworth is responsible for in excess of 4.5 kilograms of crack cocaine, and not eligible for a sentence reduction." (DE # 603 at 4.) Additionally, the Seventh Circuit, in affirming the court's order denying Mr. Dilworth's previous motion for a reduced sentence, did not

---

[2] As noted above, to reach the maximum base offense level of 38, a defendant must be found responsible for 8.4 kilograms or more of cocaine base. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2011). For a base offense level of 36, a defendant must be found responsible for at least 2.8 kilograms but less than 8.4 kilograms of cocaine base. *Id.*

3

conclude that Mr. Dilworth was responsible for exactly 4.5 kilograms of crack. *See*

(DE # 666-1); *see also Davis,* 682 F.3d at 618 ("[T]here was more than ample evidence in

the PSR to support the district court's finding that it was foreseeable to him that he was

participating in a conspiracy that was distributing more than 4.5 kilograms of crack

cocaine.").

The issue for purposes of determining Mr. Dilworth's current motion, therefore,

becomes whether Mr. Dilworth is responsible for 8.4 kilograms or more of crack

cocaine. That amount, as noted above, is now the threshold for the maximum base

offense level of 38. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1) (2011). The

government argues that Mr. Dilworth is responsible for over 8.4 kilograms of crack, and

therefore argues that Mr. Dilworth is not eligible for a reduction under Amendment

750. (DE # 692 at 2-4.) In his motion, Mr. Dilworth does not directly address the issue,

but instead appears to assume that because the court has never made an explicit finding

that Mr. Dilworth was responsible for 8.4 kilograms or more of crack, he must be

responsible for less than that amount. (*See* DE # 689 at 3.)

In its order denying Mr. Dilworth's motion for a reduced sentence under

Amendment 706, the court discussed the conspiracy that Mr. Dilworth was a part of

and the extent of Mr. Dilworth's involvement in that conspiracy:

> Although the court stated at sentencing that Mr. Dilworth was responsible
> for a quantity exceeding "at least" 1.5 kilograms, it prefaced that conclusion
> with the remark that "[t]here's no doubt . . . that this defendant is responsible
> for *many more kilos* of crack cocaine than the 1.5." (Tr. of October 6, 2003,
> sentencing hearing at 111) (emphasis added.) In addition, the court stated
> that he was a "bit more than a street dealer. He's an associate of Bobby

4

Suggs," who was the leader of the conspiracy. As shown by those remarks, and as fully supported by all the evidence of record in this case with respect to Mr. Dilworth, the court has no trouble concluding that Mr. Dilworth is responsible for in excess of 4.5 kilograms of crack cocaine, and not eligible for a sentence reduction.

Briefly, the conspiracy of which Mr. Dilworth was a member sold a quantity of drugs which "eclipsed 16.9 kilograms of crack cocaine." *Hall*, 600 F.3d at 876. The court found that Mr. Dilworth was a member of the conspiracy for at least five years, from 1995 through 2000, and probably for longer than that. (Tr. of October 6, 2003, sentencing hearing at 110-11.) As outlined in the original PSR, during one seven-month period in 2000, street-level dealers for the conspiracy were observed selling quantities of crack cocaine at a location known as "the hill" estimated to total approximately 3.675 kilograms. An informant observed Mr. Dilworth participating in these sales, and controlled buys were made from him on July 17 and July 20, 2000. Thus, in just seven months out of Mr. Dilworth's five-year membership, he would have been aware of distribution of a quantity nearing 4.5 kilograms.

In addition, during the years that Mr. Dilworth was a member, the conspiracy's leader, Bobby Suggs, was receiving kilogram quantities of powder cocaine to convert into the crack form, and using his two top lieutenants, his brother Seantai and Aaron Davis, to distribute this product to the street-level dealers. There was evidence that Mr. Dilworth occupied a higher position than the other street-level dealers, and on occasions aided in that distribution. There was evidence that he sometimes sold crack directly from Aaron Davis's house, and on one occasion he sold Lamont Evans nine ounces (255 grams) from that location. He was observed obtaining crack directly from Bobby Suggs, and was one of the few people known to be supplied "weight" quantities by Suggs. He was known to be paid respect by the other street-level dealers on the hill, and would settle arguments that arose among them.

Based on the evidence of record, it is clear that it was foreseeable to Mr. Dilworth that he was participating in a conspiracy that was distributing far in excess of 4.5 kilograms of crack cocaine.

(DE # 603 at 3-5.)

The Seventh Circuit also outlined Mr. Dilworth's involvement in the conspiracy:

5

> Dilworth's PSR emphasized that he was more than a street-level dealer because he received large quantities of crack cocaine directly from Bobby to distribute to street-level dealers on "the Hill." The PSR also noted that Dilworth had been responsible for bringing customers to "the Hill" in the early 1990s, and that Dilworth himself had been selling drugs on "the Hill" since at least 1993 or 1994. Most importantly, Dilworth and a group of four or five other CCA street gang members were observed selling 3.5 grams of crack cocaine per day on "the Hill" over a seven-month period in 2000. That is approximately 3.675 kilograms of crack cocaine in just seven months. Taking into account that Dilworth was a member of the conspiracy for a number of years, had been selling on "the Hill" since 1993 or 1994, and that he was more than a street-level dealer, there was more than ample evidence in the PSR to support the district court's finding that it was foreseeable to him that he was participating in a conspiracy that was distributing more than 4.5 kilograms of crack cocaine.

*See* (DE # 666-1); *see also Davis,* 682 F.3d at 618.

The PSR, which the court adopted at Mr. Dilworth's sentencing hearing (Terence Dilworth Sentencing Tr. 112-16, Oct. 6, 2003), also outlined the extent of Mr. Dilworth's involvement in the conspiracy. Specifically, the PSR stated:

> 23. Terraun Price and Terence Dilworth were both longtime members of this conspiracy. Dilworth was responsible for bringing crack users (or customers) to "the Hill" in the early 1990's. . . . Price and Dilworth both received large quantities of crack cocaine directly from Suggs to distribute to street level dealers. Kenneth Lewis also witnessed Bobby Suggs sell crack cocaine to Terence Dilworth.
>
> 25. According to the investigation conducted by the FBI, when they asked about Terence Dilworth, a source advised that Dilworth was not one of the street-level narcotics dealers on "The Hill," Dilworth was more of a leader, and other people on "The Hill" showed him respect. The source observed Dilworth carrying a gun in his vehicle at times and recalled only seeing Dilworth on "The Hill" when street-level narcotics dealers had arguments and needed something settled.
>
> 27. Marven Childress also indicated that Terence Dilworth was one of the individuals selling on "The Hill" when he arrived in 1997. He stated he later found out that Terence had been selling from either 1993 or 1994.

> 30. Calvin Key admitted that he had purchased marijuana from Terence Dilworth. He also stated to agents that Dilworth was "blessed" (was initiated into the gang, usually by a beating from other gang members) member of the Vice Lords. Several witnesses indicated that Bobby Suggs supplied on a few people, including Dilworth with "weight" crack cocaine. Dilworth would be present when Suggs would cook the cocaine into crack.
>
> 36. The government asserts that the defendant was a member of the CCA from at least 1994. That the quantities of the drugs associated with the conspiracy should be attributed to the defendant. [sic] The total amount of drugs attributed to the defendant in this case far exceeds 1.5 kilograms of crack.

(PSR at 8-10; DE # 676-1 at 9-11.)

In ruling on a Section 3582(c)(2) motion, a court may not rely on new factual findings that are inconsistent with the original findings made at sentencing. *United States v. Woods*, 581 F.3d 531, 538-39 (7th Cir. 2009). However, "nothing prevents the court from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination." *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *see also Davis,* 682 F.3d at 618 ("In ruling upon [defendant's] § 3582(c)(2) motion, it was entirely appropriate for the district [court] to make new findings of fact as to the quantity of drugs attributable to [defendant], so long as those findings are consistent with the findings from the original sentencing hearing."); *United States v. Jackson*, 365 F. App'x 690, 691 (7th Cir. 2010) ("A district court can make new findings when addressing a motion to reduce a sentence when there is ample evidence on the record to support the new finding and that finding does not conflict with the district court's previous conclusion.").

As this court (DE # 603 at 4) and the Seventh Circuit have recognized, the conspiracy that Mr. Dilworth was involved in was extremely large, as the "drug quantities sold in furtherance of the conspiracy . . . eclipsed 16.9 kilograms of crack cocaine." *Hall*, 600 F.3d at 876; *see also Davis,* 682 F.3d at 617 ("[W]e have previously concluded that the CCA street gang was responsible for distributing at least 16 kilograms of crack cocaine throughout the course of the conspiracy's life."). And, as discussed above, Mr. Dilworth was a substantial player within this conspiracy. As the court noted in its order denying Mr. Dilworth's previous § 3582(c)(2) motion:

> [D]uring one seven-month period in 2000, street-level dealers for the conspiracy were observed selling quantities of crack cocaine at a location known as "the hill" estimated to total approximately 3.675 kilograms. An informant observed Mr. Dilworth participating in these sales, and controlled buys were made from him on July 17 and July 20, 2000. Thus, in just seven months out of Mr. Dilworth's five-year membership, he would have been aware of distribution of a quantity nearing 4.5 kilograms.

(DE # 603 at 4.)

If conspirators distributed the same amount of crack during the five years that Mr. Dilworth was a member of the conspiracy as they did during the seven-month period in 2000, they would have distributed approximately 31.5 kilograms of crack. Even assuming that the conspirators distributed significantly less than that amount, the amount of crack reasonably foreseeable to Mr. Dilworth would still be well over 8.4 kilograms. Because, however, Mr. Dilworth was a substantial player in this very large conspiracy for at least five years, and, considering the record as a whole, the court concludes, by a preponderance of the evidence, that it was reasonably foreseeable to

8

Mr. Dilworth that the distribution of 16.9 kilograms[3] of crack occurred, and he is therefore responsible for that amount.[4]

Under the current guidelines, the 16.9 kilograms of crack that defendant is responsible for results in a base offense level of 38, and a total offense level of 40 (including the two-level increase for the weapons violation). U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(1); *see also* PSR Addendum at 2-3 (DE # 676). A total offense level of 40 combined with a criminal history of III results in a guideline range of 360 months to life imprisonment. Thus, defendant's applicable guideline range has not changed. His guideline range under Amendment 750 remains, as it was under Amendment 706, 360 months to life imprisonment. Because defendant's guideline range has not been lowered, he does not qualify for a reduction. *United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010). Defendant's motion for a reduced sentence (DE # 689) is therefore **DENIED**.

Mr. Dilworth also filed a pro se motion to reduce his sentence under § 3582(c)(2) (DE # 671.) In that motion, Mr. Dilworth argues that he is eligible for a reduced

---

[3] In the addendum to the PSR, the United States Probation Office concluded that Mr. Dilworth can be held responsible for the distribution of 16.9 kilograms of crack. (DE # 676 at 2 ("In this case, the defendant can be held responsible for the distribution of at least 16.9 kilograms of crack cocaine . . . .").)

[4] This finding is not inconsistent with either the court's original finding at sentencing that Mr. Dilworth was responsible for "at least 1.5 kilograms of crack cocaine" (Terence Dilworth Sentencing Tr. 111, Oct. 6, 2003) or the court's finding in its order denying Mr. Dilworth's previous § 3582(c)(2) motion that Mr. Dilworth was responsible for "in excess of 4.5 kilograms of crack cocaine" (DE # 603 at 4).

sentence because the court's previous finding was only that he was responsible for in excess of 4.5 kilograms of crack. (*See id.*) The court rejected this argument above, and therefore, that motion is also **DENIED**.

**SO ORDERED.**

Date: October 4, 2013

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT